PEOPLE v PARKER

Docket No. 31252. Submitted October 5, 1977, at Grand Rapids.—
Decided July 5, 1978. Leave to appeal applied for.

While a patient at a mental institution, Jeffrey A. Parker dis-
cussed with the hospital staff his criminal sexual involvement
with a young child. Someone at the hospital informed the City
of Wyoming police of these admissions. The police obtained a
warrant and arrested the defendant, upon his release from the
institution, on a marijuana charge based upon the defendant's
attempt to turn over marijuana and drug paraphernalia to
police prior to his hospitalization. At the police station defend-
ant was asked to sign a *Miranda* rights waiver form. The
defendant refused to sign and stated that he would rather talk
to an attorney. No attorney was ever furnished. About 1-1/2
hours later defendant waived his rights and confessed to a 1975
kidnapping, sexual assault and stabbing of a five-year-old girl.
Prior to the defendant's trial on those charges, the trial judge,
at a *Walker* hearing, ruled the confession admissible. Subse-
quently, defendant was convicted of kidnapping, second-degree
criminal sexual conduct and assault with intent to do great
bodily harm less than murder, Kent Circuit Court, George R.
Cook, J. Defendant appeals, challenging the admissibility of the
confession. *Held:*

The trial court erred in ruling the confession admissible
where counsel had been requested but not provided, and the
prosecution had not sustained its heavy burden of proof in
showing that subsequent to his request for counsel, defendant
knowingly and intelligently waived this right. The admission of
the confession at trial was not harmless error.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 21 Am Jur 2d, Criminal Law § 314.

[1–7] 29 Am Jur 2d, Evidence § 555 *et seq.*

Necessity of informing suspect of rights under privilege against self-
incrimination, prior to police interrogation. 10 ALR3d 1054.

[2, 6] 21 Am Jur 2d, Criminal Law §§ 314–318.

[3] 21 Am Jur 2d, Criminal Law §§ 316–318.

[4] 21 Am Jur 2d, Criminal Law § 368.

[5] 29 Am Jur 2d, Evidence § 590.

M. J. KELLY, J., dissented. He would hold that the waiver by defendant of his *Miranda* rights without counsel being present was proper and that the confession was admissible, and he would affirm.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—CRIMINAL LAW—INTERROGATION OF DEFEND-ANT—RIGHT TO COUNSEL—RIGHT TO REMAIN SILENT.

The interrogation of an individual must cease until an attorney is present where the individual states that he wants an attorney; at that time the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning; if the individual cannot obtain an attorney and indicates that he wants one before speaking to police, the police must respect the decision to remain silent.

2. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—WAIVER—INTERROGATION OF DEFENDANT—BURDEN OF PROOF.

A person who has invoked his right to counsel may later waive that right without an attorney; however, if an interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

3. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—RIGHT TO REMAIN SILENT—ASSERTION OF RIGHTS—WAIVER—BURDEN OF PROOF.

A more careful scrutiny is required of a suspect's waiver of his right to counsel where the waiver is made without the presence of counsel after the desire to have counsel has been asserted than for a waiver made prior to the assertion of the right to counsel, or after the assertion of the right to remain silent; the normal heavy burden which the prosecution bears in proving the validity of a waiver should be of a very high standard where waiver of a previously invoked right to counsel is involved.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—CON-FESSION—ASSERTION OF RIGHTS—BURDEN OF PROOF—HARMLESS ERROR.

A defendant's confession should not have been ruled admissible where it was obtained from the defendant without the assistance of counsel shortly after the defendant had asserted his right to counsel and where the prosecution failed to carry its

very heavy burden of proof that the defendant validly waived his right to counsel; the admission of the defendant's confession was not harmless error.

DISSENT BY M. J. KELLY, J.

5. APPEAL AND ERROR—CONSTITUTIONAL LAW—CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS.

*A reviewing court is required to examine the entire record and independently determine the issue of voluntariness where error is alleged in the admission of a defendant's confession; the reviewing court should reverse where it is left with a definite and firm conviction that a mistake was committed.*

6. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—WAIVER—INTERROGATION OF DEFENDANT.

*A finding of a knowing and intelligent waiver of the right to counsel is impossible where a suspect requests counsel during interrogation; if however, the police terminate the interrogation, subsequent circumstances may provide a basis for a later knowing and intelligent waiver of the right to counsel.*

7. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—MIRANDA WARNING—INTERROGATION OF DEFENDANT—CONFESSIONS—VOLUNTARINESS.

*The* Miranda *ruling does not erect an absolute per se bar on any conversation with the accused by the police after the accused has requested counsel, it only inhibits investigative interrogation related to the specific crime itself; therefore, where a defendant was advised that he was under arrest for possession of marijuana, was read his* Miranda *rights and asserted his right to counsel, and where the record reveals that there was no further interrogation on the marijuana charge and that there was no interrogation of the defendant about certain other crimes or references made to them prior to the defendant's waiver of the right to counsel, and where there was a subsequent confession concerning the other crimes, the waiver should be held valid and the confession deemed voluntary and admissible as evidence against the defendant.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Donald A. Johnston III,* Chief Appellate Attorney, for the people.

*Loeks, Buth, Wood & Weidaw,* for defendant on appeal.

Before: M. F. Cavanagh, P. J., and Bronson and M. J. Kelly, JJ.

Bronson, J. Defendant was convicted on July 12, 1976, after a bench trial, of kidnapping, MCL 750.349; MSA 28.581, second-degree criminal sexual conduct, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a), and assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279. He appeals of right.

We reverse all three convictions, holding that a confession introduced at trial was obtained in violation of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

In early December, 1975, defendant appeared at the Wyoming, Michigan Police Department and attempted to turn over some marijuana and drug paraphernalia. No arrest was made. A few days later, defendant attempted suicide by taking a drug overdose. After emergency treatment, he was transferred to a mental institution. While at the institution, defendant began to discuss his criminal sexual involvement with a young child in conversations with hospital staff. Someone[1] at the hospital informed the Wyoming police of these admissions. The police obtained a warrant and arrested defendant upon his release on a marijuana charge, based on defendant's attempt to turn over the drug to police prior to his hospitalization. Officer Cline of the Wyoming Police Department admitted that at the time of defendant's arrest on the marijuana charge, the information received from the hospital had caused him to focus upon defend-

---

[1] The record does not discloe who released the information.

ant as the prime suspect in the 1975 kidnapping, sexual assault and stabbing of a five-year-old girl.

Defendant was taken to the Wyoming police station. Officer Cline testified that he then asked defendant to sign a *Miranda* rights waiver form:

"Q. Did he sign this?
"A. No, sir, he did not.
"Q. Do you know why he did not, or did he indicate why?
"A. He advised me at that time that he would rather talk to an attorney before talking to me about it."

No attorney was ever furnished. Different versions of what happened next were presented by defendant and Officer Cline. Defendant testified that immediately after he requested an attorney, Officer Cline began to interrogate him, stating that he had a good idea that the defendant had something on his mind, and suggesting that he could insure that defendant would get the psychiatric treatment he desired if he confessed. Officer Cline testified that he first "processed" defendant on the marijuana charge and then the two engaged in "general conversation" for about an hour. Cline testified that defendant initiated the idea of treatment at a forensic center and confessed after Cline had indicated that treatment could be obtained.

There is no dispute that about 1-1/2 hours after defendant had asked for an attorney, he waived his rights and confessed. An hour after that he again waived his rights and confessed on video tape.

After a pretrial *Walker*[2] hearing, the trial judge held the confession admissible, relying on *Michigan v Mosley,* 423 US 96; 96 S Ct 321; 46 L Ed 2d

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

313 (1975), although he expressed doubts about the applicability of that case.

As stated in *Mosley,* the procedure to be followed after an accused requests counsel is detailed in *Miranda:*

" 'If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the .attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

" 'This does not mean, as some have suggested, that each police station must have a "station house lawyer" present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time.' " *Michigan v Mosley, supra,* at 101, n 7, quoting *Miranda v Arizona, supra,* at 474.

See *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974), *People v Brannan,* 64 Mich App 374; 236 NW2d 80, *lv granted,* 395 Mich 812 (1975), *People v Lewis,* 47 Mich App 450; 209 NW2d 450 (1973).

The difficult question presented in this case is whether a suspect who has asserted his right to counsel may later waive that right without having spoken to a lawyer. The courts which have considered this issue have reached different results.

The weight of authority holds that a subsequent

waiver of a once-invoked right to counsel may be valid in certain circumstances. See, *e.g., United States v Rodriguez-Gastelum,* 569 F2d 482 (CA 9, 1978), *United States v Massey,* 550 F2d 300 (CA 5, 1977), *United States v Pheaster,* 544 F2d 353 (CA 9, 1976), *United States v Womack,* 542 F2d 1047 (CA 9, 1976), *United States v Cavallino,* 498 F2d 1200 (CA 5, 1974), *United States v Lewis,* 425 F Supp 1166 (D Conn, 1977), *People v Sparks,* 82 Mich App 44; 266 NW2d 661 (1978). These cases generally rely on language in *Miranda* permitting waiver of rights[3] and *Michigan v Mosley, supra,* which allowed a subsequent waiver of the right to remain silent. While we find that *Mosley* expressly did not decide the issue in the case at bar,[4] the rationale of *Mosley* militates against application of a per se exclusionary rule:

"[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." *Michigan v Mosley, supra,* at 102.

We hold that a person who has invoked his right to counsel may later waive that right without an attorney.

While we reject a per se rule in this case, we do recognize differences between a suspect's assertion of a right to remain silent and his assertion of a

[3] "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 US at 475.

[4] *Mosley* expressly distinguished the two issues, limiting its holding to the right to remain silent. 423 US at 101, n 7, 104, n 10.

right to counsel. A waiver made after assertion of a right to counsel should be viewed with skepticism; once an individual decides that he is incapable of communicating with authorities absent counsel, we should be very suspicious of a later, counselless waiver. See *Michigan v Mosley, supra* (White, J., concurring).[5]

In light of this difference, a more careful scrutiny of the suspect's waiver is required than for a waiver made prior to the assertion of right to counsel or after assertion of the right to remain silent. *United States v Cavallino, supra, United States v Lewis, supra.* In particular, police should not be allowed to ignore a suspect's request for a lawyer; interrogation must cease until, at the least, a reasonable *opportunity* to obtain counsel has been afforded. The normal heavy burden which the prosecution bears in proving the validity of a waiver should be of a very high standard where waiver of a previously invoked right to counsel is involved.

In the case at bar, the prosecution has not borne its very heavy burden of proving a valid waiver. Even accepting Officer Cline's version of the facts as true, there was less than a half-hour break in questioning after defendant requested a lawyer.[6]

---

[5] Justice White commented:

"[T]he reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto. The authorities may then communicate with him through an attorney. More to the point, the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." 423 US at 110, n 2.

[6] Although Officer Cline denied "interrogating" defendant, it appears that the "general conversation" was designed to elicit a confession. *See Brewer v Williams,* 430 US 387; 97 S Ct 1232; 51 L Ed 2d 424 (1977).

Officer Cline was aware that defendant had been experiencing emotional and drug problems and had just been released from an institution. Finally, defendant testified that there was no break in interrogation at all.

We are left with a "definite and firm conviction" that the trial court erred in holding the confession admissible. See *People v McGillen #1, supra.* The prosecution failed to carry its very heavy burden of proof that defendant validly waived his right to counsel.

We also hold that the admission of defendant's confession at trial cannot be deemed harmless error.

In view of our disposition of this case, we need not address the other issues raised by defendant.

Reversed and remanded for a new trial.


M. F. CAVANAGH, P. J., concurred.


M. J. KELLY, J. *(dissenting).* Since the only error alleged is in connection with the admission of defendant's confession, we examine the entire record and independently determine voluntariness. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972); we reverse where we are left with a definite and firm conviction that a mistake was committed. *People v McGillen, #1,* 392 Mich 251, 257; 220 NW2d 677 (1974). See *People v Sparks,* 82 Mich App 44; 266 NW2d 661 (1978). On the record presented I am not left with a definite and firm conviction that a mistake was committed, and, therefore, dissent.

The trial court resolved the conflict of testimony between defendant and Officer Cline, noted by the majority, in favor of the testimony given by Officer

Cline. The Fourth Circuit Court of Appeals, when
confronted with a similar *Miranda* issue, noted:

"The trial court, which had the advantage of observ-
ing the witnesses and their demeanor, implicitly found
that the investigating officer had acted in good faith,
without guile or subterfuge, in conducting this inquiry,
and such a finding is not to be lightly disturbed."
*United States v Grant,* 549 F2d 942, 947 (CA 4, 1977).
See also *United States v Pheaster,* 544 F2d 353, 364 (CA
9, 1976), *cert den,* 429 US 1099; 97 S Ct 1118; 51 L Ed
2d 546 (1976), *United States v Charlton,* 565 F2d 86, 89
(CA 6, 1977).

I recognize that there are conflicting theories
among the courts which have ruled upon the
validity of a waiver of counsel after the suspect
has made a request to be represented by counsel.
One line of cases holds that a subsequent waiver
without the presence of counsel is involuntary per
se, while the prevailing view maintains that a
subsequent waiver could be voluntary depending
on the facts of the individual case. See *Nash v
Estelle,* 560 F2d 652, 655 (CA 5, 1977), *United
States v Charlton, supra.* See also *Biddy v Dia-
mond,* 516 F2d 118, 122 (CA 5, 1975), *United
States v Womack,* 542 F2d 1047, 1050 (CA 9, 1976),
*State v Greene,* 91 NM 207; 572 P2d 935 (1977).

Where a suspect requests counsel during ques-
tioning, and the police ignore that request and
continue the interrogation, a finding of a knowing
and intelligent waiver of the right to counsel is
impossible. *Nash v Estelle, supra,* at 656. If, how-
ever, the police terminate the interrogation, subse-
quent circumstances may provide a basis for a
knowing and intelligent waiver of the right to
counsel. *Id.* Another panel of this Court has re-
cently stated:

"We therefore hold that, when a person asserts his right to counsel, the interrogation must cease until an attorney is present, or, *after the lapse of a significant period of time,* the person knowingly and intelligently waives his counsel right. See, *e.g., United States v Pheaster,* 544 F2d 353, 367–368 (CA 9, 1976)." *People v Sparks, supra,* at 49–50. (Emphasis added.)

The facts of the instant case are unusual, and whether or not there was a lapse of a significant period of time between defendant's request for counsel and his eventual waiver is not relevant to the disposition of the *Miranda* issue. Here we are dealing with a defendant who prior to his request for an attorney was advised that he was under arrest for possession of marijuana. Nothing in the record indicates that defendant was advised that he was a suspect for the instant crimes. After defendant requested an attorney, having been advised of his rights under the marijuana charge, the record establishes that there was absolutely no interrogation about the marijuana charge. Furthermore, a review of the testimony of both defendant and the interrogating officer reveals that there was no interrogation or reference made about the instant crimes prior to defendant's waiver of counsel and subsequent confession. The court in *United States v Grant, supra,* at 946, noted:

"It does not follow, though, that *Miranda* erects an absolute *per se* bar on any conversation with the accused by the investigating officers after the former has requested counsel. It only inhibits investigative interrogation related to the specific crime itself."

The reasoning of the *Grant* court is applicable in the present circumstances. Even though the interrogating officer had focused on the defendant as a

prime suspect in the instant crimes, he had not related that information to the defendant. The defendant was unaware of the fact that he was focused on in the instant crimes, but voluntarily made a statement confessing to them. Officer Cline asserted that defendant did so only after a subsequent waiver of the right to counsel, after again being read his *Miranda* rights. Defendant denies that the officer read the rights again prior to the initial confession. There was no investigative interrogation expressly inquiring into defendant's involvement in the instant crimes.

Finally, my opinion is bolstered from the following passage in *United States v Pheaster, supra,* at 368, which involved a much closer *Miranda* question than the one present here. The court found a proper waiver of counsel based upon the following reasoning:

"Our examination of the record in this case has revealed that the decision regarding waiver was a close one; yet, on balance, we believe that the district court was correct in deciding that the Government had met its 'heavy burden' in establishing Pheaster's waiver. Because it was not possible for the F.B.I. agents who arrested Pheaster to provide him with an attorney at the moment that he demanded one, the key question is whether the failure of the agents to sit mute during the ride to county jail, where an attorney could be provided, mandates the exclusion of Pheaster's statements. On the particular facts of this case, we are convinced that such exclusion was not mandated. This conclusion would have been significantly easier had there been an express waiver of rights but the absence of such a waiver is not determinative, for this Court has held that in appropriate circumstances a waiver of *Miranda* rights can be implied rather than express. *United States v. Hilliker,* 436 F.2d 101, 103 (9 Cir.), *cert denied,* 401 U.S. 958; 91 S.Ct. 987; 28 L.Ed.2d 242 (1971); *see also United States v. Vigo,* 487 F.2d 295, 299 (2 Cir.

1973) (statement after defective *Miranda* warning held
to be volunteered). Although this question is not specifi-
cally addressed in *Mosley,* the recitation of the facts
indicates an implied, rather than an express, waiver by
Mosley. 423 U.S. at 104, 96 S.Ct. 321 [46 L Ed 2d 313
(1975)]. We think that this is a case in which waiver
can be implied. It is critical to focus on the fact that
Pheaster agreed to cooperate with the agents after he
had been in the car for only fifteen to twenty minutes—
a point not challenged in his brief. Thus, although he
was in the car for a longer period, his cooperation was
not the result of lengthy incommunicado detention.
This is not a case in which there was an intentional
delay in providing an attorney in the hope that the
suspect would yield to pressure and recant his demand
for an attorney. It is also important to note that Pheast-
er's statements came as a result of an objective, undis-
torted presentation of the extensive evidence against
him, particularly the positive identification of his fin-
gerprint on the ninth note. As in *Hodge* [487 F2d 945
(CA 5, 1973)] and *Davis* [527 F2d 1110 (CA 9, 1975)], the
questioning did not really begin until Pheaster had
clearly indicated his willingness to cooperate. Finally
Pheaster was reminded early in the evening that he did
not have to talk to the agents but he continued to talk
because of his expressed desire to help them find Larry
Adell. Under all the circumstances of this case, we
conclude that waiver of the *Miranda* rights, including
the earlier demand to see an attorney, was properly
found." (Footnote omitted.)

   The preceding last quoted sentence reflects my
disposition of this case. I find a valid waiver.
   I would affirm.